Filed 4/7/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| EVERARDO RODRIGUEZ et al., | |
| Plaintiffs and Appellants, | E073766 |
| v. | (Super.Ct.No. RIC1807727) |
| FCA US, LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. L. Jackson Lucky IV, Judge. Affirmed.

Rosner, Barry & Babbitt, Hallen D. Rosner, Arlyn L. Escalante; Knight Law Group, Steve Mikhov, and Roger R. Kirnos for Plaintiffs and Appellants.

Clark Hill, David L. Brandon, Georges A. Haddad; Horvitz & Levy, Lisa Perrochet, and Shane H. McKenzie for Defendant and Respondent.

This appeal from a grant of summary judgment involves the Song-Beverly Consumer Warranty Act (the Act) (Civ. Code, § 1790 et seq.)—also known as California's "Lemon Law"—which provides special consumer remedies to purchasers of new cars covered by express warranties.[1] The remedy at issue here, commonly called the "refund-or-replace" provision, requires a manufacturer to replace a defective "new motor vehicle" or make restitution if, after a reasonable number of attempts, the manufacturer (or its representative) is unable to repair the vehicle to conform to the applicable express warranty. (§ 1793.2, subd. (d)(2).) The Act defines "new motor vehicle" as a new vehicle purchased primarily for personal (nonbusiness) purposes but also specifies that the term includes "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." (§ 1793.22, subd. (e)(2).)

Plaintiffs Everardo Rodriguez and Judith Arellano purchased a two-year-old Dodge truck from a used car dealership. The truck had over 55,000 miles on it and, though the manufacturer's basic warranty had expired, the limited powertrain warranty had not. After experiencing electrical defects with the truck, plaintiffs sued the manufacturer, FCA US, LLC (Chrysler),[2] for violation of the refund-or-replace provision. FCA moved for summary judgment, arguing the truck was not a "new motor vehicle," and the trial judge agreed.

---

[1] Unlabeled statutory citations refer to the Civil Code.

[2] FCA, or Fiat Chrysler Automobiles, is the parent company that oversees Chrysler and Dodge, among other brands. (*Santana v. FCA US, LLC* (2020) 56 Cal.App.5th 334, 339.)

The sole issue in this case is whether the phrase "other motor vehicle sold with a manufacturer's new car warranty" covers sales of previously owned vehicles with some balance remaining on the manufacturer's express warranty. We conclude it does not and that the phrase functions instead as a catchall for sales of essentially new vehicles where the applicable warranty was *issued with* the sale. We therefore affirm.

**I**

**FACTS**

In 2013 plaintiffs purchased a 2011 Dodge Ram 2500 from the Pacific Auto Center in Fontana. The truck originally came with a basic three-year/36,000 mile bumper-to-bumper warranty and a five-year/100,000 mile limited powertrain warranty, which covers the engine, transmission, and drive system. At the time of the sale, the truck had over 55,000 miles on it and its basic warranty had expired, though an unspecified balance remained on the powertrain warranty.

A year later, the truck's check engine light came on and plaintiffs took it to an authorized Chrysler dealer in Hemet for repair. The dealer appeared to fix the issue, but over the next year or so (through May 2015), the check engine light came on repeatedly, necessitating five additional trips to the same dealer for service.

On April 30, 2018, plaintiffs sued FCA alleging four causes of action, only one of which is at issue in this appeal—violation of section 1793.2, subdivision (d)(2), the Act's "new motor vehicle" refund-or-replace provision. Plaintiffs alleged the truck suffered defects in its Totally Integrated Power Module (TIPM), an enclosed device in the engine

3

compartment that contains a circuit board and regulates electrical power to most of the truck's systems. (*Santana v. FCA US, LLC*, *supra*, 56 Cal.App.5th at p. 339.) They alleged they had afforded FCA a reasonable number of attempts to fix the issues with the TIPM and, because FCA failed to do so, they were entitled to a refund of the truck's sale price or a replacement vehicle.

FCA filed a motion for summary judgment, arguing plaintiffs' claim failed because the manufacturer's refund-or-replace provision applies to new vehicles only, and it was undisputed plaintiffs purchased the truck used. FCA presented evidence that the Pacific Auto Center is an unaffiliated, third party reseller and therefore was not one of its representatives at the time of sale. It also presented evidence that no warranties were issued at the time of sale.

After a hearing on the motion, Riverside County Superior Court Judge Jackson Lucky concluded a previously owned vehicle sold with a balance remaining on one of the manufacturer's express warranties does not qualify as a "new motor vehicle" under the Act. The judge entered judgment in favor of FCA, and plaintiffs timely appealed.

## II

## ANALYSIS

A.    *Standard of Review*

A party moving for summary judgment bears an overall burden of persuasion to demonstrate there is no triable issue of material fact and they are entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.) "In

4

reviewing a defense summary judgment, we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175.)

Where, as here, we are asked to answer a purely legal question of statutory interpretation based on undisputed facts, we independently construe the relevant statutory provisions. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 749-750.) Because the language of the provision is the most reliable indicator of legislative intent, we start there, giving the words their plain and commonsense meaning within the context in which they appear. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) "If the language is unambiguous, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'" (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 972 (*Kirzhner*).)

B.      *The Song-Beverly Act*

Because we do not read statutory provisions in isolation, we consider the broader statutory context in which the definition of "new motor vehicles" applies before turning to the definition itself.

1.      *Statutory framework*

"The Song-Beverly Act is a remedial statute designed to protect consumers who have purchased products covered by an express warranty." (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 798.) To that end, it regulates warranty terms and imposes service and repair obligations on the parties who issue the warranties. (*Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1486.)

The Act defines the parties who issue warranties as follows. A manufacturer is an entity "that manufactures, assembles, or produces consumer goods." (§ 1791, subd. (j).) A distributor is an entity "that stands between the manufacturer and the retail seller in purchases, consignments, or contracts for sale of consumer goods." (§ 1791, subd. (e).) A seller or retailer is an entity "that engages in the business of selling or leasing consumer goods to retail buyers." (§ 1791, subd. (*l*).)

The Act requires that where a manufacturer sells "consumer goods" accompanied by an express warranty, it must maintain local repair facilities "to carry out the terms of those warranties." (§ 1793.2, subd. (a)(1)(A).) Importantly, "consumer goods" are defined as "any *new* product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." (§ 1791, subd. (a), italics added.) If, "after a reasonable number of attempts" the manufacturer is unable to conform the consumer goods to the applicable express warranty, the refund-or-replace provision kicks in, and "the manufacturer shall

6

either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer." (§ 1793.2, subd. (d)(1).)

The Act also provides for implied warranties of merchantability and fitness for "consumer goods"—i.e., new products. (§§ 1791.1, subd. (c), 1792.) These implied warranties may not last less than 60 days or more than one year after the sale of the consumer goods to which they apply, and liability for their breach lies with the manufacturer. (§§ 1791.1, subd. (c), 1792.)

That's not to say the Act has no protections for used goods; it does, but the protections are limited and bind the seller or distributor of the used product. (§ 1795.5.) Section 1795.5 provides express warranty protections for used goods only where the entity selling the used product *issues an express warranty at the time of sale*. The provision states: "Notwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean "new" goods, the obligation of a *distributor or retail seller* of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter." (Italics added.) "It shall be the obligation of the *distributor or retail seller* making express warranties with respect to used consumer goods (*and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new*) to maintain sufficient service and repair facilities within this state to carry out the terms of such express warranties." (§ 1795.5, subd. (a), italics added.)

The Act also provides implied warranties for used products. These are shorter than the implied warranties for new products; their maximum duration is three months. (§ 1795.5, subd. (c).) As is the case with liability for breach of express warranties, "in the sale of used consumer goods, liability for breach of implied warranty *lies with distributors and retailers*, not the manufacturer," unless the manufacturer issues a new warranty along with the sale of the used good. (*Ruiz Nunez v. FCA US LLC* (2021) 61 Cal.App.5th 385, 398 (*Nunez*), italics added; see also *Kiluk v. Mercedes-Benz USA, LLC* (2019) 43 Cal.App.5th 334, 339-340 (*Kiluk*) ["The Song-Beverly Act provides similar remedies in the context of the sale of used goods, except that the manufacturer is generally off the hook"].)

Thus, a hallmark of the Act is that its consumer protections apply against the party who sold the product to the buyer *and* issued the express warranty. With this framework in mind, we turn to the refund-or-replace provision at issue and the definition of "new motor vehicle."

### 2. *The "new motor vehicle" refund-or-replace provision*

In 1982, the Legislature amended the Act to include provisions specifically applicable to motor vehicles; this amendment became known as the Lemon Law. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 123 (*Jensen*).) The motor vehicle refund-or-replace provision—section 1793.2, subdivision (d)(2)—is similar to the general, consumer goods refund-or-replace provision, except that it requires the manufacturer to provide the remedy "promptly" and contains vehicle-specific rules

8

regarding both replacement and restitution. (§ 1793.2, subd. (d)(2).) Like its consumer goods counterpart, section 1793.2, subdivision (d)(2) applies to sales of new vehicles only; specifically, it applies to "a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22."

Initially, the Act's definition of "new motor vehicle" consisted of a single sentence describing the term as any "new motor vehicle which is used or bought for use primarily for personal, family, or household purposes." (Former § 1793.2, subd. (e)(4)(B), Stats. 1982, ch. 388, § 1, p. 1723; *Park City Services, Inc. v. Ford Motor Co., Inc.* (2006) 144 Cal.App.4th 295, 304.) But over the years, the definition underwent several amendments to include certain types of vehicles that didn't obviously or technically satisfy the general definition.

The current definition, located in section 1793.22, subdivision (e)(2) provides: "'New motor vehicle' means a new motor vehicle that is bought or used primarily for personal, family, or household purposes. 'New motor vehicle' also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person . . . or any other legal entity, to which not more than five motor vehicles are registered in this state. 'New motor vehicle' includes the chassis, chassis cab, and that portion of a motor home devoted to its propulsion, . . . [and] *a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty* . . . . A demonstrator is a vehicle assigned by a dealer

9

for the purpose of demonstrating qualities and characteristics common to vehicles of the same or similar model and type." (Italics added.)

C. *Plaintiffs' Truck Is Not a "New Motor Vehicle"*

Plaintiffs argue the phrase "other motor vehicle sold with a manufacturer's new car warranty" describes their truck because it still had a balance remaining on an express warranty from the manufacturer—the limited powertrain warranty—when Pacific Auto Center sold it to them. FCA argues the phrase qualifies dealer-owned cars and demonstrators and thus refers to vehicles that, like those two types of vehicles, have not been previously sold and are sold with new or full warranties. FCA argues plaintiffs' interpretation is at odds with the rest of the Act's definition of "new motor vehicles." While we acknowledge that *in isolation* the phrase "other motor vehicle sold with a manufacturer's new car warranty" could arguably refer to any car sold with a manufacturer's warranty still in force, we agree with FCA that context clearly requires a more narrow interpretation. Context is a fundamental aspect of statutory interpretation, and here it's key to discerning the phrase's meaning. (*Kirzhner*, *supra*, 9 Cal.5th at p. 972 ["We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context"].)

To begin with, the phrase appears in a definition of *new* motor vehicles. That fact alone strongly suggests the Legislature did not intend the phrase to refer to used (i.e., previously sold) vehicles. But, more importantly, the phrase is preceded by "a dealer-owned vehicle and demonstrator," which comprise a specific and narrow class of

10

vehicles. Though they have not been previously sold to a consumer, demonstrators and dealer-owned cars are *used* in the sense that they will have been driven for various purposes before sale. As such, they will necessarily have more miles on their odometers than the typical vehicle in a dealer's new car inventory. What makes these vehicles unique is that even though they aren't technically new, manufacturers (or their dealer-representatives) treat them as such upon sale by providing the same type of manufacturer's warranty that accompany new cars.

In other words, demonstrators and dealer-owned vehicles comprise a narrow category of *basically* new vehicles—they have never been previously sold to a consumer and they come with full express warranties. Given this context, we think the most natural interpretation of the phrase "other motor vehicle sold with a manufacturer's new car warranty" is that it, too, refers to vehicles that have never been previously sold to a consumer and come with full express warranties.

Plaintiffs urge us to construe the phrase "other motor vehicle sold with a manufacturer's new car warranty" as a distinct item in a list of three types of vehicles—a standalone category of previously sold vehicles that are conceptually distinct from dealer-owned vehicles and demonstrators. But the provision's grammatical structure signals the list contains two types of vehicles, not three. If the list contained three distinct types of vehicles, we would expect to see commas separating the types. Instead, the use of "and" and "or" to separate the three items indicates the Legislature structured the provision as a list of two vehicles (dealer-owned vehicles "and" demonstrators) followed by an

11

adjectival clause qualifying or describing those vehicles. This organization reveals that, rather than create a new and different class of vehicles, the phrase was intended to function as a catchall provision to cover a narrow class vehicle—the previously driven, but basically new (i.e., not previously sold) car.

Indeed, nothing about the wording or structure of the provision indicates the Legislature intended to expand the definition of "new motor vehicle" to include used vehicles sold with some part of the manufacturer's warranty still in force. And the expansion would be a significant one, as there is no standard length for the express warranties that manufacturers issue. Some bumper-to-bumper warranties last for one year or 12,000 miles while others for five years and 60,000 miles, and some limited warranties last 10 years or more. Even a warranty like the one here—three years or 36,000 miles— could see several different owners before it expires. We think if the Legislature intended to expand the definition of "new motor vehicle" to include a potentially vast category of used cars it would have done so more clearly and explicitly than tucking it into a reference to demonstrators and dealer-owned vehicles.

As we read the phrase, its clear purpose is to function as a catchall to ensure that manufacturers cannot evade liability under the Act by claiming a vehicle doesn't qualify as new because the dealership hadn't actually used it as a demonstrator. For example, the phrase would cover a car used by the manufacturer or dealer for *any purpose* (say, a service loaner), so long as the car was sold *as if* it were new—that is, with a full new car warranty.

We also note that plaintiffs' interpretation raises more questions than it answers. For example, how would the Act treat a car that was sold by private seller before eventually ending up at a used car dealership? It's clear the Act doesn't cover products purchased in private sales (§ 1791, subd. (*l*)), but if our hypothetical car were purchased from the used car dealership before its warranties expired, would it transform from a used vehicle back to new upon its third sale?

Another question is whether a buyer who purchases a used car with only a few miles remaining on the original warranty would be entitled to the same protection as the original buyer. If so, what would constitute "a reasonable number of attempts" to repair the vehicle? (§ 1793.2, subd. (d)(2).) We would either have to conclude the refund-or-replace remedy is toothless for such buyers or permit them to use previous owners' repair experiences towards their claim. We doubt the Legislature intended to create such confusion when it created the "dealer-owned vehicle/demonstrator" category of "new motor vehicle." (See *Alford v. Pierno* (1972) 27 Cal.App.3d 682, 688 [courts should interpret statutory language to "produce a result that is reasonable" and to "promote rather than defeat the *general purpose and policy* of the law"].)

The problems with plaintiffs' interpretation only increase when we consider the phrase in the broader context of the Act as a whole. As we've seen, the Act makes it clear when a provision applies to used or previously owned products by including the term "used" in the provision. Notably, that term is absent from the definition of "new motor vehicle" as well as from the manufacturer's refund-or-replace provision. Instead, the

Legislature created a separate, seller refund-or-replace provision for used goods. The fact that provision places liability on the party who issues the warranty along with the sale (the seller) and explicitly disclaims any liability on the part of the manufacturer is another strong indication the phrase at issue functions as a catchall for vehicles that have not been previously sold and that come with full warranties. (§ 1795.5.)

Our examination of the entire Act yields two additional reasons for concluding the phrase doesn't cover subsequent sales of vehicles with unexpired manufacturer's warranties. First, the Act defines "express warranty" as any "written statement *arising out of a sale* to the consumer of a consumer good pursuant to which the manufacturer . . . undertakes to preserve or maintain the utility or performance of the consumer good . . . ." (§ 1791.2, subd. (a)(1), italics added.) In plaintiffs' case, the limited powertrain warranty did not "aris[e] out of" the sale, it transferred to plaintiffs by operation of law along with title to the truck. The warranty *arose* from the initial sale to the truck's first buyer.

Second, as part of the Motor Vehicle Warranty Adjustment Programs (§§ 1795.90-1795.93), the Act requires manufacturers to notify all "consumers" of any warranty adjustments regarding safety or emissions-related recalls, and defines "consumer" as "any person to whom the motor vehicle is *transferred* during the duration of an express warranty." (§ 1795.90, subd. (a), italics added.) This definition of "consumer" indicates the Legislature is aware of the distinction between warranties that arise out of a sale and those that transfer to subsequent purchasers as a result of a sale. The lack of reference to transferred warranties in the definition of "new motor vehicle" suggests the Legislature

14

made a deliberate choice not to include sales of used vehicles accompanied by unexpired express warranties.

Based on all of these textual reasons, we conclude the phrase "other motor vehicle sold with a manufacturer's new car warranty" unambiguously refers to cars that come with a new or full express warranty. But even if this meaning weren't readily apparent from the statute, the Act's legislative history would convince us the phrase refers to vehicles sold with full warranties. The phrase was added to the Act's definition of "new motor vehicle" in 1987 with the enactment of Assembly Bill Number 2057. The enrolled bill report explains that our lawmakers deemed it necessary to add "dealer-owned vehicles and *'demonstrator' vehicles sold with a manufacturer's new car warranty*" to the definition of "new motor vehicles" because "[s]ome buyers [were] being denied the remedies under the lemon law because their vehicle is a 'demonstrator' or 'dealer-owned' car, *even though it was sold with a new car warranty*." (Dept. Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 2057 (Sept. 25, 1987) pp. 3, 5, italics added.) This discussion indicates the amendment was intended to provide relief to a narrow class of consumers by targeting a specific type of vehicle—the basically new car. Notably absent from the discussion is any mention of used vehicles. Indeed, we found no reference to used vehicles in any of the legislative materials regarding Assembly Bill Number 2057. One would assume that if the amendment proposed to expand manufacturers' liability under the Act to a large class of used vehicles, such a change to the status quo would warrant mention if not discussion.

As far as we're aware, the issue before us is one of first impression; no California court has addressed whether a used car purchased from a retail seller unaffiliated with the manufacturer qualifies as a "new motor vehicle" simply because there is some balance remaining on the manufacturer's warranty. There is, however, one federal case directly on point, and it reaches the same conclusion we do.

In *Johnson v. Nissan N.Am., Inc.* (N.D. Cal. 2017) 272 F.Supp.3d 1168, the plaintiff sued Nissan under the manufacturer's refund-or-replace provision after the car she purchased from a used car dealership suffered alleged defects. She argued she was entitled to relief because her car was still under Nissan's three-year or 36,000-mile basic warranty. The court disagreed and dismissed her claim on the ground her car was not a "new motor vehicle." The court explained that because the plaintiff "purchased her car through CarMax, a third-party reseller" the only way she would be entitled to the Act's express warranty protections was if CarMax "extended express and implied warranties to her." (*Id.* at p. 1179.) Such is the case here. The record doesn't indicate whether Pacific Auto Center issued any warranties to plaintiffs, but that would be the only way they could seek a refund or replacement under the Act.

Plaintiffs argue *Jensen* is on point, but we find the case easily distinguishable. *Jensen* involved a lease *by a manufacturer-affiliated dealer* who issued a *full new car warranty* along with the lease. The issue was whether the leased car qualified as a "new motor vehicle" under the Act. Plaintiff had learned of the car through a newspaper ad offering leases of "BMW demonstrators." (*Jensen*, *supra*, 35 Cal.App.4th at p. 119.)

16

When she arrived at the dealership—a BMW-authorized dealership—the car had 7,565 miles on its odometer. The salesperson told her this was because it had previously been used by BMW as a demonstrator. The plaintiff agreed to lease the car and the salesperson gave her BMW's 36,000-mile warranty "on top" of the miles already on the odometer. (*Ibid.*) As it turned out, the salesperson was wrong and the car was not in fact a demonstrator; it had been previously owned by the BMW Leasing Corporation and registered in New Jersey.

BMW tried to use that fact to its advantage in court, arguing the car didn't qualify as a "new motor vehicle" because it wasn't in fact a demonstrator. BMW argued that the car didn't qualify as "other motor vehicle sold with a manufacturer's new car warranty" because the category "clarifies the word 'demonstrator' and is not intended as a separate category." (*Jensen*, *supra*, 35 Cal.App.4th at p. 122.) The court rejected BMW's position and concluded the car qualified as a new vehicle because BMW's representative issued a new car warranty with the lease. (*Ibid.*) The court also rejected BMW's interpretation of the phrase "other motor vehicle sold with a manufacturer's new car warranty," reasoning that the phrase referred to "cars sold with a balance remaining on the manufacturer's new motor vehicle warranty." (*Id.* at p. 123.) Plaintiffs seize on this statement to argue their interpretation is correct.

Though we think *Jensen* was correctly decided, we agree with *Dagher* that its statement about "the Act's coverage for subsequent purchasers of vehicles with a balance remaining on the express warranty must be read in light of the facts then before the court

17

and are limited in that respect." (*Dagher v. Ford Motor Co.* (2015) 238 Cal.App.4th 905, 923.) Given that those facts included a car leased with a *full* manufacturer's warranty issued by the manufacturer's representative, the court was not asked to decide whether a used car with an unexpired warranty sold by a third party reseller qualifies as a "new motor vehicle."

*Dagher* is not the only opinion to question *Jensen's* statement about express warranties. In *Kiluk*, the court expressed "reservations" about the statement because it implied that "a car accompanied by a 20-year warranty" would qualify as a "new motor vehicle" if it were purchased used "on year 18." (*Kiluk*, *supra*, 43 Cal.App.5th at p. 340, fn. 4.) *Kiluk* questioned the wisdom of an approach that considered "every car sold with any portion of a new-vehicle warranty remaining" to be a new motor vehicle, and stated it was more likely the phrase "*other motor vehicle sold with a manufacturer's new car warranty*" refers to "cars *originally* sold with a new motor vehicle warranty, not subsequent sales." (*Ibid.*)

We agree with *Kiluk* on this point. In other words, we agree with *Jensen's* holding but not all of its reasoning. And the holding hurts, not helps, plaintiffs' argument. BMW's attempt to avoid liability by claiming the vehicle wasn't actually a demonstrator exemplifies the need for a catchall provision covering any not-previously-sold car accompanied by a full new car warranty.

Having examined the statutory provision, its place within the Act as a whole, and its legislative history, we conclude the phrase "other motor vehicles sold with a

18

manufacturer's new car warranty" refers to cars sold with a full warranty, not to previously sold cars accompanied by some balance of the original warranty. We therefore conclude the trial judge was correct to conclude plaintiffs' truck does not meet the definition of "new motor vehicle" and to dismiss their claim against FCA as a result.

As a final point, we note our conclusion doesn't mean that plaintiffs or others in their position have no legal recourse against a manufacturer who fails to conform a vehicle to an applicable, unexpired express warranty. Though not entitled to the Act's refund-or-replace remedy, the beneficiary of a transferrable express warranty can sue a manufacturer for breach of an express warranty to repair defects under the California Uniform Commercial Code. (Cal. U. Com. Code, §§ 2313, 2714, 2715.)

## III

## DISPOSITION

We affirm the judgment. Appellants shall bear costs on appeal.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

MILLER
Acting P. J.

RAPAHEL
J.

19